UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAMILY FARM ALLIANCE,<br><br>       Plaintiff,<br><br>       v.<br><br>KENNETH LEE SALAZAR, et al.,<br><br>       Defendants. | 1:09-CV-01201 OWW DLB<br><br>MEMORANDUM DECISION RE PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ADMINISTRATIVE RECORD.  (DOC. 25) |

### I. INTRODUCTION

Plaintiff, Family Farm Alliance ("Alliance") moves to compel Federal Defendants to "immediately file the Administrative Record in the above-captioned action." Doc. 26 at 1, filed November 9, 2009.  Federal Defendants, who contend that they are only a few weeks away from completing and filing the Administrative Record ("AR"), oppose the motion to compel.  Doc. 27, filed November 23, 2009.  The Alliance filed a reply on November 30, 2009.  Doc. 28.

## II. LEGAL AND FACTUAL BACKGROUND

The Complaint, which arises under the Information Quality Act ("IQA"), guidelines promulgated pursuant to the IGA, and Section 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), challenges both the preparation and dissemination of Defendant United States Fish and Wildlife Service's ("FWS") December 15, 2008 Final Biological Opinion concerning the impact of coordinated operations of the Central Valley Project ("CVP") and State Water Project ("SWP") on the delta smelt (*hypomesus transpacificus*) ("BiOp" or "2008 BiOp"), as well as FWS's compliance with IQA procedures.

The Information Quality Act of 2000 directs the Office of Management and Budget ("OMB") to issue guidelines "that provide policy and procedural guidance to Federal agencies for ensuring and maximizing the quality, objectivity, utility, and integrity of information disseminated by Federal agencies ...." Pub. L. No. 105-554 § 1(1)(3) (Dec. 21, 2000) (codified at 44 U.S.C. 3516 note 4(a)). OMB was instructed to include the following provisions in its guidelines: (1) that federal agencies issue their own guidelines not more than one year after OMB issues its guidelines; (2) that agencies "establish administrative mechanisms allowing

affected person to seek and obtain correction of information maintained and disseminated by the agency that does not comply with [the OMB guidelines];" and (3) that agencies periodically report to the director of OMB the nature and number of complaints and how they were handled.  *See* 44 U.S.C. 3516 note 4(b)(2).  The OMB guidelines provide:

> To facilitate public review, agencies shall establish administrative mechanisms allowing affected persons to seek and obtain, where appropriate, timely correction of information maintained and disseminated by the agency that does not comply with OMB or agency guidelines. These administrative mechanisms shall be flexible, appropriate to the nature and timeliness of the disseminated information, and incorporated into agency information resources management and administrative practices.
>
> i. Agencies shall specify appropriate time periods for agency decisions on whether and how to correct the information, and agencies shall notify the affected persons of the corrections made.
>
> ii. If the person who requested the correction does not agree with the agency's decision (including the corrective action, if any), the person may file for reconsideration within the agency. The agency shall establish an administrative appeal process to review the agency's initial decision, and specify appropriate time limits in which to resolve such requests for reconsideration.

67 Fed. Reg. 8,452, 8,459 (Feb. 22, 2002).

FWS's IQA Guidelines, issued October 18, 2002, "establish FWS policy and procedures for reviewing,

3

substantiating, and correcting the quality of information it disseminates," so that "persons affected by that information may seek and obtain, where appropriate, correction of information that they belief may be in error or otherwise not in compliance with" the IQA.  67 Fed. Reg. 64,407, FWS IQA Guidelines[1] at 1.  Any affected member of the public may submit a "request for correction" to FWS asserting that material made public by FWS does not meet IQA standards.  *Id*. at 7.  If FWS determines "a request for correction of information [is] appropriate for consideration," the "burden of proof is on the complainant with respect to the necessity for the correction as well as with respect to the type of correction they seek."  *Id*. at 8.  As part of its analysis of the correction request, "FWS may conduct a post hoc peer review of original information from other sources when circumstances warrant."  *Id*. at 10.

Upon finding a request for correction of information to be appropriate for consideration, FWS "will review the request and issue a decision within 90 calendar days from receipt of the challenge."  *Id*. at 9.  However, "[i]f the request requires more than 90 calendar days to resolve, the agency will inform the complainant that more time is

---

[1] Available at http://www.fws.gov/informationquality/topics/FWS%20Information%20Quality%20Guidelines.pdf

4

required, indicating the resason(s) why and providing an alternative timeline for reaching a decision." *Id*.

If FWS approves of a correction request, it "will take corrective action, however, the time required for corrective action to be taken will depend on the circumstances of each situation." *Id*.  Corrective measures may include "personal contacts via a letter, form letters, press releases or postings on the FWS website to correct a widely disseminated error or address a frequently raised request." *Id*.

If FWS denies a request for correction, a requester may administratively appeal that denial to "a panel consisting of high-level officials from the FWS and, when available, another Department of Interior agency such as the U.S. Geological Survey." *Id*.  The appeal panel "will make a recommendation which will be forwarded to the Director of the FWS (or another senior official authorized to act on the Director's behalf)." *Id*.  The Director or designated representative "will make the final decision on the appeal within 60 calendar days from receipt of the appeal...." *Id*.

"Factors such as ... statutory or court-ordered deadlines, circumstances beyond [FWS's] control, or other time and financial constraints may limit or preclude

5

applicability of [the] guidelines...."  *Id*. at 2.  FWS's IQA Guidelines also provide that the "guidelines are intended only to improve the internal management of FWS relating to information quality" and " do not provide any right to judicial review" or "create any right or benefit, substantive or procedural, enforceable by law or equity by a party against the United States, its agencies, its offices, or another person."  *Id*. at 6.

The First Cause of Action alleges that Federal Defendants failed to comply with the IQA, the IQA Guidelines, and ESA § 7 in preparing and disseminating the 2008 BiOp.  Doc. 1 at ¶¶ 39-51.  Among other things, the Alliance alleges that the 2008 BiOp failed to use the "best scientific and commercial data available" as required by the IQA, IQA Guidelines, and ESA § 7.  *Id*. at ¶44,

The Second Cause of Action alleges that the IQA Guidelines "mandate the timeline in which the FWS is to provide appropriate responses to a request for correction and an appeal," and that FWS has not responded adequately and in a timely manner to their requests and appeals, which constitutes unlawful delay under the Administrative Procedure Act ("APA").  *Id*. at ¶¶ 54-55.  Plaintiff seeks an order compelling "agency action unlawfully withheld or

6

unreasonably delayed." *Id*. at ¶53.[2]

The third cause of action alleges that, by failing to conduct an appropriate peer review using independent experts as required by FWS's own IQA Guidelines, Defendants have violated the APA by reaching a finding or conclusion "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

### III. ANALYSIS

The parties dispute both the content and timing of the AR. The parties agree that the AR in the *Consolidated Delta Smelt Cases*, 1:09-cv-00407 OWW DLB, will make up the bulk of the record in this case, along with certain, stipulated communications between the parties. *See* Doc. 26 at 3. Federal Defendants also plan to include in the AR materials generated during the IQA administrative appeal, including analysis and documents relied upon and generated by the independent third-party review panel that FWS convened as part of the IQA administrative appeal process. *See* Doc. 27 at 1.

Plaintiff opposes inclusion of materials from the IQA

---

[2] Federal Defendants contend that because FWS responded to the Alliance's appeal on November 20, 2009, this cause of action is moot, and indicate their intent to file a motion to dismiss on mootness grounds. Doc. 27 at 10 n.1; Doc. 27-2 (FWS's response to administrative appeal). Plaintiff does not agree that their second cause of action is moot. Doc. 28 at 4. It is not appropriate to decide mootness at this time, as the issue has not been properly presented for decision.

7

appeal process, asserting they are "extra-record evidence." Doc. 26 at 3. The Alliance contends that Federal Defendants' plan to include these materials in the AR "demonstrates their confusion between actions that challenge the propriety of a final agency action and actions that are brought to compel an agency to act in the first instance." *Id*. at 3. Plaintiff's argument continues:

> In this particular litigation, the Alliance's [] First and Third Claims for Relief are seeking judicial review of the 2008 Biological Opinion, the final agency action in this matter, as a challenge to the propriety of that opinion. Only the Alliance's Second Claim for Relief is seeking the FWS response to its IQA Appeal as a means to compel action required by the IQA and its implementing guidelines....
>
> When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). In these cases, the agency must justify its final action by reference to the reasons it considered at the time it acted. *See Camp v. Pitts*, 411 U.S. 138, 142-43 (1973). The Second Claim for relief is to compel Defendant FWS to provide an adequate response to the Alliance's IQA Appeal. It is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1). In such cases, review is not limited to the record, as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record. *See Independence Mining Co., Inc. v. Babbit*, 105 F.3d 502, 511 (9th Cir. 1997).

> Therefore, the issue regarding the administrative record with regard to the First and Third Claims for relief, which are seeking judicial review of the flawed 2008 Biological Opinion. As the 2008 Biological Opinion has been prepared and disseminated, the review of that agency decision must be limited to the information the FWS had before it at the time of decision-making. The hundreds of pages of exhibits submitted by Federal Defendants regarding the post hoc review of the 2008 Biological Opinion were clearly not in the possession of the agency at the time of the final agency action.

Doc. 28 at 3-4.

Plaintiff essentially argues that it should be able to rely on the IQA as a substantive standard against which the BiOp can be measured, while the AR should be limited to materials in possession of the agency when the BiOp was issued. But, the only remotely analogous published cases suggest otherwise. *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1177 (10th Cir. 2005). In Forest Guardians, plaintiff, a nonprofit organization, sought certain documents from the Bureau of Land Management ("BLM") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and a waiver of all search and copying fees. *Id*. at 1174. The agency refused to release the information and denied the fee waiver request. Plaintiff filed an administrative appeal, but the agency failed to timely respond. *Id*. at 1176. Plaintiff then filed a complaint in federal court,

seeking declaratory and injunctive relief.  Although the scope of the administrative record was not an issue in that case, the tenth circuit specifically indicated that the record included "the initial FOIA request, the agency's response, and any subsequent materials related to the administrative appeal."  *Id*. at 1177; *see also, Jarvick v. C.I.A.*, 495 F. Supp. 2d 67, 71 (D.D.C. 2007)(applying language from Forest Guardians to include in the administrative record "materials related to the administrative appeal," while excluding documents filed after the appeal was completed).

   Plaintiff's challenge to the BiOp based on the IQA and allegations that FWS has failed to abide by IQA procedural requirements have brought the IQA and its administrative procedures squarely before the court for decision.  Plaintiff's objection to inclusion of materials related to the administrative appeal is without merit.  The record for these claims must include Plaintiff's appeal and the Department of Interior's response.

   Plaintiff's objection to the filing of the AR in mid-January is also unfounded.  The Alliance correctly points out that "the new water year has begun and the restrictive measures implemented by the 2008 Biological

Opinion continue to harm the Alliance and its members," Doc. 26 at 6, but fails to explain why the filling of the AR by mid-January will harm the Alliance, given that Plaintiff's motion for summary judgment is not due until April 15, 2010.

### IV. CONCLUSION

Plaintiff's motion to compel immediate production of the AR is DENIED.

```
SO ORDERED
Dated:   December 18, 2009
                              /s/ Oliver W. Wanger
                                Oliver W. Wanger
                           United States District Judge
```